## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| Avery Wilson, | ) | |
| **Appellant,** | ) | Case No: 22-3049 |
| v. | ) | |
| | ) | On Appeal from the |
| CTW Transportation Services, Inc., | ) | United States District Court |
| Colby Harlow, Jacqueline Woods, | ) | for the Western District of |
| and Tim Ireland, | ) | Missouri, Case No. |
| **Appellees.** | ) | 4:21-CV-0682-DGK |


# APPELLEES' BRIEF


Respectfully submitted,

/s/ Floyd R. Finch, Jr.
Floyd R. Finch, Jr.  MO Bar # 28377
24211 E. Strode Road
Blue Springs, MO 64015
816-560-1234
(Fax) 816-817-5206
ffinch@kcbusinesstriallawyers.com

Attorney for Appellees

## SUMMARY OF THE CASE

*Pro se* Appellant Avery Wilson seeks reversal of the decision of the Honorable David Gregory Kays of the United States District Court for the Western District of Missouri finding that Wilson "engaged in bad faith delay in the administrative proceedings before the Department of Labor by committing serious violations of the rules of discovery, refusing to comply with basic requirements to prepare the case for trial before the ALJ, and heaping personal insults on the ALJ in an attempt to postpone the proceedings," and concluding that the Court lacked subject matter jurisdiction under 49 U.S.C. § 31105(c).

## STATEMENT REGARDING ORAL ARGUMENT

Appellees/Defendants believe that the facts and legal arguments are adequately presented in Appellees' Brief and the decisional process would not be significantly aided by oral argument.

Appellate Case: 22-3049    Page: 2    Date Filed: 03/06/2023 Entry ID: 5251791

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............ ……………………………………iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............…….1

STATEMENT OF THE CASE.............. ………………………………....2

SUMMARY OF THE ARGUMENT ............. ………………………….20

ARGUMENT................ ………………………………………….21

    I.  Wilson's Appeal Should be Denied because Wilson Has
    Failed to Comply with the Baseline Requirements of
    Federal Rule of Appellate Procedure 28 and to Support his
    Factual Assertions and Legal Arguments with Citations to
    the Record, Putting an Undue Burden on Appellees and the
    Court to Try to Discern the Merit of His Appeal ...................…………21

    II. Wilson Failed to Meet His Burden to Establish Subject
    Matter Jurisdiction Because He Failed to Support His
    Claim that Wilson's Bad Faith Conduct Did Not Cause a
    Delay in the Administrative Proceedings ......................………………23

CONCLUSION............. ……………………………………………27

CERTIFICATE OF COMPLIANCE ........... …………………………….28

CERTIFICATE OF SERVICE ...........………………………………… 28

Appellate Case: 22-3049     Page: 3     Date Filed: 03/06/2023 Entry ID: 5251791

# TABLE OF AUTHORITIES

*Cases:*                                                                 ***Page***

*Ahlberg v. Chrysler Corp*., 481 F.3d 630 (8th Cir. 2007) .................................. 2, 22

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727 (11th Cir. 1982) ......................... 1, 23

*Farmer's Edge Inc. v. Farmobile LLC,* 970 F.3d 1027 (8th Cir. 2020).............. 1, 22

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ....................... 1, 20

*Mortensen v. First Fed. Sav. Loan Ass'n*, 549 F. 2d 884 (3rd Cir. 1977) ........... 1, 24

*Osborn v. U.S.*, 918 F.2d 724 (8th Cir. 1990)............................................... 1, 23-24

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc*., 908 F.3d
313 (8th Cir. 2018). ……………………………………………………………1, 22

*Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert denied*, 454 U.S. 897 (1981) ..23


*Statutes:*

49 U.S.C. § 31105(c) .. ………………………………………...…1, 20, 21, 24


*Other Authorities:*

Federal Rule of Appellate Procedure 28.... ……………………………1, 21, 22

Appellate Case: 22-3049     Page: 4     Date Filed: 03/06/2023 Entry ID: 5251791

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

Whether Plaintiff/Appellant Avery Wilson has satisfied his burden to establish subject matter jurisdiction despite comments made by a Department of Labor administrative law judge that Wilson acted in bad faith to delay the administrative proceedings on his complaint to OSHA—which findings were confirmed by District Judge David Gregory Kays after an independent review of the record—so that the federal court lacked subject matter jurisdiction under 49 U.S.C. § 31105(c).

*Osborn v. U.S.*, 918 F.2d 724, 730 (8th Cir. 1990)

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)

*Mortensen v. First Fed. Sav. Loan Ass'n*, 549 F. 2d 884, 891 (3rd Cir. 1977)

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 (11th Cir. 1982)

Whether Wilson's failures to comply with Federal Rule of Appellate Procedure 28 in his Brief Are sufficiently egregious to cause his appeal to be denied on the merits or his appeal dismissed, and whether Wilson waived any arguments not made effectively in Appellants' Brief.

*Farmer's Edge Inc. v. Farmobile LLC,* 970 F.3d 1027, 1034 (8th Cir. 2020)

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc*., 908 F.3d 313, 324 (8th Cir. 2018)

*Ahlberg v. Chrysler Corp*., 481 F.3d 630, 636 (8th Cir. 2007).

1

# STATEMENT OF THE CASE[1]

On behalf of his company Simpatico Logistics LLC ("Simpatico"), Complainant Avery Wilson signed an Independent Contractor Agreement with CTW on August 18, 2020, to haul freight for CTW Transportation Services, Inc. ("CTW"). R. Doc. 9 at 9-9 1 to 24. Wilson was to drive Simpatico's tractor--designated by the number 515--to deliver freight to CTW's customers. *Id.*

That contract was terminated by CTW's owner Colby Harlow 14 days later, on September 1, 2020, because Simpatico's tractor was inoperable and CTW did not want to pay insurance on an inoperable tractor. R. Doc. 9-8 at 1-2 (¶¶ 4-8, 11-

---

[1] Most of the background facts stated in this section were submitted to Department of Labor Administrative Law Judge Jonathan Calianos in a motion filed on September 8, 2021, entitled "Respondents' Application for a Finding of Bad Faith by Avery Wilson; For Dismissal of Complaint With Prejudice Due to Avery Wilson's Bad Faith, Fabrication and Spoliation of Evidence, Refusal to Produce His Mobile Phone for Forensic Analysis, Refusal to Participate in Preparing a Joint Prehearing Statement, and Refusal to Participate in a Hearing on the Merits." This filing and its exhibits were presented to Judge Kays as Exhibit B to Defendants' Motion to Dismiss [Doc. 9] filed on November 12, 2021.

Wilson's response to Respondents' "Application for a Finding of Bad Faith, etc." was brief: "Blow it out your ass you brain dead fuck[.]" R. Doc. 9-42 at 1.

Thus, when Wilson claims, for example, that "Defendant has provided no acceptable evidence that Plaintiff has fabricated and spoliated evidence," Appellant's Brief at 8, he ignores the exhibits produced to ALJ Calianos and then to Judge Kays demonstrating Wilson's fabrication and spoliation of evidence, and further ignores his burden to establish that Judge Kays' findings are clearly erroneous.

12). Mr. Harlow communicated that termination by voicemail to Mr. Wilson at 1:26 p.m. C.D.T. on September 1, 2020. *Id.* ¶ 13.

During the first week of Simpatico's contract with CTW—from August 18 to August 23—Simpatico's tractor was not available to haul freight for CTW. *Id.* ¶ 9. As a result, Wilson did not haul any freight for CTW until August 24, 2020. Id. Simpatico/Wilson hauled freight for CTW using Simpatico's tractor 515 on August 24, 25, 26, and 27, 2020. *Id.*

Department of Transportation regulations and CTW policies require drivers to note any mechanical issues with their trucks or trailers, particularly any safety issues. Mr. Wilson generally did not comply with those regulations and policies. R. Doc. 9 at 9-8, 2 (¶ ¶ 10, 12).

But on August 24, 2020, however, Wilson did fill out a KeepTruckin' Driver Vehicle Inspection form used by CTW, showing no vehicle or trailer defects. R. Doc. 9- 15 at 1-2. This was the only record CTW had concerning the condition of its trailers submitted by Wilson during Simpatico's contract.

Accordingly, when his Truckers Justice Center lawyer alleged in paragraph 12 of Wilson's OSHA complaint [filed on October 7, 2020] that "Complainant refused to operate his tractor-trailer due to defective trailer parts and accessories including, but not limited to a leaking hub, a caged brake, flat tire, and missing mudflap," [R. Doc. 1-2 at ¶ 12] CTW knew that allegation was false. In none of

Appellate Case: 22-3049     Page: 7     Date Filed: 03/06/2023 Entry ID: 5251791

CTW's records, nor in any of the records originally produced by Wilson, was there a single document supporting the claim that Wilson had refused to drive any of CTW's trailers during the 14 days of Simpatico's contract.

Wilson's OSHA complaint alleged that he was fired[2] on September 2, 2020, in retaliation for filing a complaint against CTW with the Federal Motor Carrier Safety Administration ("FMCSA"). R. Doc.1-2 at 4. But Wilson's FMCSA complaint shows on its face that Wilson filed that complaint on September 3, 2020, **after** Simpatico's contract was terminated on September 1 or 2, 2020. R. Doc. 1-3. Thus, the core premise of Wilson's alleged "retaliation" complaint—that Wilson was "fired" because he had complained to FMCSA--is false on its face.

On April 6, 2021, ALJ Calianos issued an Order that discovery was to close on May 25, 2021. R. Doc. 1-2.

Consistent with Respondents' defense that Wilson's claims were false and frivolous, during the designated discovery period Wilson did not produce any documents supporting his claims of being forced to haul defective equipment or to drive excessive hours--or, for that matter, that he had complained to CTW prior to the termination of Simpatico's contract about either alleged underlying "violation" of the Surface Transportation Assistance Act.

---

[2] In normal parlance, Wilson was not "fired" by CTW. Rather CTW terminated Wilson's Independent Contractor Agreement with Simpatico on September 1, 2020, because Simpatico's tractor was inoperable. R. Doc. 9-8 at ¶¶ 16, 11.

4

**Wilson's Deposition**

In his deposition taken on March 30, 2021, Wilson blamed the absence of documents supporting his claims on his attorneys, claiming Trucker's Justice Center had not produced all the documents he claimed to have provided to them prior to his deposition. R. Doc. 9-10 at 2, 7 l.16 to 8 l. 12; 9 l.4-14; 11 l. 7 to 18; 12 l.2 to l. 23; 13, l. 1 to 10.[3]

Defendants' counsel followed up repeatedly with Mr. Taylor inquiring about production of any relevant documents not previously produced. R. Doc. 9-6. Trucker's Justice Center did not produce any additional documents through the close of discovery on May 25, 2021. *Id.*

On May 27, 2021, Wilson produced a set of new documents not produced during the discovery period. The paralegal for Taylor & LaVoie, Ltd. d/b/a "Trucker's Justice Center" transmitted these documents to Respondent's Counsel with an e-mail stating "Attached please find documents Mr. Wilson produced to us **this week**." (Emphasis supplied). R. Doc. 9-17

---

[3] Wilson also confirmed in his deposition that he previously had sued three trucking companies for alleged "retaliation" using the same lawyer who was representing him in this case, and settled all those cases. R. Doc. 9-8 at 4 ¶ 22-23. Wilson had not identified any of those companies in his application to contract with CTW. *Id.* at ¶ 22. Harlow believes that Wilson was trying to set up CTW for an STAA retaliation complaint when he applied to haul freight for CTW and did not list all of his prior employers in his application. *Id.* ¶ 24.

5

Study of the documents produced on May 27 and comparison of those documents with documents created at the time of the events revealed that Wilson had fabricated and spoliated documents in a belated and untimely effort to support his claims.

**Wilson's first fabricated document**

Among the documents transmitted with the Truckers' Justice Center paralegal's May 27 e-mail was a Driver's Vehicle Inspection Report ["DVIR"] form copyrighted by J.J. Keller & Associates, Inc. in 2010—a form not used by CTW and unfamiliar to CTW. R. Doc. 9-18. This DVIR suggested trailer number 53124 was missing a mudflap at 9:30 a.m. on "24 Aug. **21**." *Id.* (emphasis supplied).

Not only was this form inconsistent with R. Doc. 9-15, but when he fabricated this document, Wilson had mistakenly dated it "2021"--a mistake he would have been unlikely to make if it really had been created in August 2020.

**Wilson's second fabricated document**

The second document Wilson fabricated was another DVIR form copyrighted by J.J. Keller & Associates supposedly created by Wilson at "1410 **a**.m." on "28 Aug 20." R. Doc. 9-19 (emphasis supplied). Again, this is not a form CTW uses or had ever seen before.

On this form, Wilson reported that trailer No. 48128 (supposedly being pulled by his tractor # 515) had a "CAGED BREAK [sic] (PASS. FRONT)," apparently at 2:10 in the afternoon--if Wilson's recording of "1410 A.M." is to be believed. *Id.* (It is odd that when Wilson fabricated this document he did not check the boxes used on this form to report a brake problem, but that may just be attributable to sloppy fabrication.)

The more significant problems with this fabrication are (1) that Wilson forgot he was <u>not</u> driving Simpatico's tractor #515 on August 28, 2020; and (2) he was <u>not</u> pulling trailer # 48128 that day--he was pulling trailer number 48129 witih a tractor borrowed from CTW. R. Doc. 9-23 at ¶¶ 9-10. These errors made the fabrication obvious to CTW.

Two days earlier, on August 26, 2020, Simpatico's tractor broke down due to an emissions control issue. R. Doc. 9-10 at 27; R. Doc. 8-23 at 16 ("This miserable pile of shit is having to do another parked regen I'll get this trailer back when I can but I won't have time for anything else today."); *id.* at 23 ("I can't take this load. ... I'm having issues with my truck. I am sorry."). On August 26, 2021, Wilson asked CTW's Terminal Manager Tim Ireland if Simpatico could rent a tractor to haul freight on August 28 so Simpatico could haul a load to Specialty Growers in Annapolis, Missouri. R. Doc. 9-20 at 1.

Appellate Case: 22-3049   Page: 11   Date Filed: 03/06/2023 Entry ID: 5251791

Because CTW had a driver out sick that day, CTW happened to have a spare tractor available for Wilson to rent on August 28, 2020. R. Doc. 9-11. CTW rented Wilson that tractor from CTW on August 28, 2020. That tractor was designated by the number 332082. Tractor 332082 was registered with an electronic logging device through KeepTruckin'.

Simpatico's first job for that day was to pick up an already loaded flatbed trailer to deliver to a customer in Annapolis, Missouri, in the southeast quadrant of Missouri, south of St. Louis. That already loaded trailer was # 48129. R. Doc. 9-22 at ¶ 10; R. Doc. 9-23 at 24, 27.

The KeepTruckin log for tractor 332082 on August 28, 2020, shows that Wilson picked up the truck and trailer around midnight and drove through the early morning hours to Annapolis, MO. R. Doc. 9-22 at ¶¶ 13-14; R. Doc. 9-25 at 1-6. Sometime between 7:41 a.m. and 10:30 a.m. on August 28, Wilson notified CTW's dispatcher Jacque Woods that the trailer had been unloaded, and he was prepared to take a back-haul to the Kansas City area. R. Doc. 9-23 at 23-26.

Thus, Wilson's fabricated DVIR suggested falsely that he was driving his tractor #515 towing trailer 48128 on August 28, 2020.

Appellate Case: 22-3049   Page: 12   Date Filed: 03/06/2023 Entry ID: 5251791

**Avery Wilson's Fabricated Text Messages with Tim Ireland**

The third fabrication produced by Avery Wilson on May 27, 2021, was a purported exchange of text messages with Tim Ireland that do not appear in the iMessages produced by Mr. Ireland in November 2020. *Compare* R. Doc. 9-24 to R. Doc. 9-20; *see also* R. Doc. 9-21 at ¶¶ 3-8. The messages belatedly produced by Trucker's Justice Center's paralegal falsely state that Ireland forced Wilson to drive trailer # 48128 with a "caged break" in a text message chain purportedly beginning at 9:40 a.m. on Friday, August 28, 2021.R. Doc. 9-24. Wilson's fabricated messages suggest falsely that he was sitting just outside the CTW Warehouse at 9:40 a.m. because he states he could just pull the trailer in to the CTW shop to have the mechanic fix the "caged break [sic]" on trailer # 48128. *Id.*

Apparently when Wilson fabricated these text messages he had forgotten that by 9:40 a.m. on August 29, 2020, he was already in southeast Missouri pulling a different trailer. R. Doc. 9-22 at ¶¶ 9-14. Nevertheless, Wilson tried to make CTW look bad by fabricating this series of text messages with Tim Ireland.

**Avery Wilson's Spoliation of Text messages with Jacque Woods**

Careful comparison of the text messages with Avery Wilson produced by Jacque Woods in November 2020 (R. Doc. 9-23) with the untimely production by Avery Wilson of his text messages with Ms. Woods on May 27, 2021 (R. Doc. 9-26), reveals that Wilson has deleted certain messages which he deemed

unflattering to himself and re-ordered others to obfuscate the chain of events that lead to this case. Spoliation of evidence is tampering just as sure as fabricating evidence is tampering, and is further evidence of Wilson's bad faith.

**Virtual Pretrial Conferences on July 22 and 28**

On July 22, 2021, Judge Calianos held a virtual pretrial conference which addressed the parties' impasse over the proper response to Plaintiff's belatedly-produced fabricated and spoliated documents. R. Doc. 29. He decided to continue the trial set for the following week and give the parties a week to work out their differences. *Id. at* 22-24.

On July 28, 2021, Judge Calianos convened another virtual pretrial hearing. R. Doc. 30. To begin to resolve the impasse over the fabricated documents, Judge Calianos ordered Plaintiff to turn his mobile phone over to his attorney for a forensic analysis of the data available on that phone by a forensic expert chosen by Mr. Taylor and to provide that report to Defendants' counsel within 30 days. *Id.* at 19-25.

**Follow up by Defense Counsel, and Plaintiff fires his attorneys**

Again, Defendants' counsel followed up with Mr. Taylor on August 16 and 23, 2021, to see if the expert hired by Plaintiff's lawyer had produced a report on Plaintiff's mobile phone. R. Doc. 31. But on August 20, 2021, instead of producing his phone for a forensic examination, Plaintiff notified Judge Calianos

10

by e-mail that he had fired his attorneys "for grounds of ineffectual counsel." R. Doc. 32.

On August 24, 2021, Truckers Justice Center moved for leave to withdraw from the OSHA case. R. Doc. 33. In response, Judge Calianos scheduled a virtual pretrial conference on August 30, 2021, and required both Mr. Taylor and Plaintiff to attend. R. Doc. 34.

**August 30 Pretrial Conference and Orders**

At the virtual pretrial conference on August 30, 2021, ALJ Calianos announced that he would grant Truckers Justice Center leave to withdraw, but he nevertheless set the case for a virtual trial on September 8, 2021. R. Doc. 35 at 16. *See also* R. Doc. 36.

Plaintiff declared he was ready for trial "Anytime." R. Doc. 35 at 8. ALJ Calianos ordered the parties to cooperate in the drafting of a Joint Pretrial Statement, to exchange exhibits, and to file the Joint Pretrial Statement and proposed exhibits by Friday, September 3, 2021. *Id*. at 8-9, 16.

When Defendants' counsel raised the issue of Plaintiff's fabrication and spoliation of documents, Plaintiff interjected, "That's bullshit." *Id.* at 12. Plaintiff was immediately admonished for his language by Judge Calianos. *Id.* at 12-13.

Defendants' counsel invoked the doctrine that Plaintiff's failure to produce his phone for a forensic examination justified an adverse inference that the phone's

data would have confirmed Defendants' contention of spoliation and fabrication of evidence. *Id.* at 14. Plaintiff twice confirmed he had no questions about the process leading to trial on September 8, 2021. *Id.* at 16, 18.[4]

**Developments August 31 to September 3, 2021**

The following day, however, Plaintiff sent an e-mail to Judge Calianos' staff attorney: "Please advise the Chief Judge and Judge Calianos, Complainant exercises his right to "kick-out" to US District. I will have the letter in a few days." R. Doc. 38.

Plaintiff's e-mail did not relieve him of the obligations of the Pretrial Order issued the day before. Neither did it continue the trial set for September 8. Ms. Cutaiar advised Plaintiff "Judge Calianos will not dismiss the present claim until he receives a copy of the federal court complaint." R. Doc. 39. Plaintiff acknowledged "I am aware." *Id.*

On September 1, Defendants' counsel reminded Plaintiff of his obligation to prepare an initial draft of the Joint Pretrial Statement due on Friday, September 3,

---

[4] Later that day, Defendants' counsel wrote to Judge Calianos' staff attorney about an issue with filing Respondents' Memorandum Concerning the Motion of Paul Taylor, Peter L. Lavoie, and Truckers Justice Center to Withdraw, and Motion to Enforce the Professional Obligations of the Withdrawing Lawyers to this Tribunal and to Opposing Counsel and Respondents, served on August 27, 2021. R. Doc. 37. Attached to that e-mail was an e-mail sent by Plaintiff to Defendants' counsel on Saturday, August 28, 2021, at 4:46 a.m.: "Lol. Did Giuliani draft this bullshit for you? That's quite an amusing stretch. Let it never be said that you lacked imagination." *Id.*

Appellate Case: 22-3049     Page: 16     Date Filed: 03/06/2023 Entry ID: 5251791

2021.  R. Doc. 40.  Plaintiff refused to participate in drafting the Joint Pretrial

Statement as ordered by Judge Calianos, responding: "I am withdrawing the

Complaint at ALJ and filing in US District Court. No, there will not be a JPS." *Id.*

 **Developments September 7, 2021**

After the Labor Day weekend, at 10:14 a.m. on September 7, 2021, Ms.

Cutaiar advised the parties:

> As this case has not yet been removed to Federal District Court, please be
> advised that Judge Calianos intends to proceed with the hearing **tomorrow
> at 10AM (EDT)**.  Below please find the Microsoft Teams link for the
> virtual hearing:
> Click here to join the meeting
>
> Mr. Wilson, if you have retained new counsel, please provide them with the
> hearing link.

R. Doc. 41.   (Emphasis in original).

 Plaintiff responded vividly:

> Complainant will not be participating in a bench trial whereby
> complainant is at a complete disadvantage due to previous representation
> by ineffectual counsel.
>
> Whatever the Judge Calianos wants is of no consequence to me. I have
> advised the Judge that filing in US District Court is imminent. Judge
> Calianos does a complete disservice to the Complainant, the Secretary of
> Labor, the STAA, the intent of the Law and whistleblowers everywhere.
> How abjectly unconscionable!

*Id.*

Ms. Cutaiar responded to Plaintiff's message:

> Mr. Wilson:
>
> The Judge has ordered that trial begin tomorrow at 10:00 am. There has been no proper motion filed requesting that the trial date be vacated, and the Judge will convene the trial as scheduled and ordered. The Judge is willing to discuss any request to continue the trial at 10:00 am tomorrow, once we convene. Any willful failure to appear by any party will result in the automatic dismissal of the complaint or default judgment, depending on the non-appearing party, per order of the Judge.

*Id.*

Plaintiff responded to Ms. Cutaiar's olive branch harshly:

> Deliver to Judge Calianos prior to tomorrow's proceedings.
>
> Re: 2031-STA-00016
> Judge Calianos:
>
> Firstly, I would like to say that my being polite, professional and courteous has gotten me no where.
>
> That being said I would like to open by saying that I did not serve this Country so a complete fucking imbecile of a "Judge" could shit all over the law and all over process. You probably couldn't get a firm to take you so obviously you blew someone to get a phony judgeship on a phony quasi court. ***
>
> This is my motion to vacate trial setting. I fucking told you that this case will be prosecuted in US District Court.
>
> I cannot participate in a trial so completely fucked up by my previous counsel. Then you fucking knee cap me and close discovery. I agreed to trial on the proviso that Second Request for Production would be

14

produced by Respondent. You're an absolute fucking disgrace. I guess one couldn't get expect [sic] anymore from a "Judge" at thr [sic] DoL.

I will be on the line in the morning so state my objections on the record.

I want this letter on the docket.

Avery Wilson
Complainant

*Id.*[5]

## September 8, 2021

Before the hearing the following morning, Defendants' counsel filed an Application for a Finding of Bad Faith by Avery Wilson; for Dismissal of Complaint with Prejudice due to Avery Wilson's Bad Faith, Fabrication and Spoliation of Evidence, Refusal to Produce His Mobile Phone for Forensic Analysis, Refusal to Participate in Preparing a Joint Prehearing Statement, and Refusal to Participate in a Hearing on the Merits. R. Doc. 9. The motion included 21 attached Exhibits. *Id.*

Plaintiff responded to Defendants' Motion in one sentence at 7:54 a.m.: "Blow it out your ass, you brain dead fuck[.]". R. Doc. 42.

At the hearing on September 8, 2021, Judge Calianos gave Plaintiff an opportunity to file this case in federal court instead of proceeding to trial. R. Doc.

---

[5] Plaintiff followed up his tirade with an e-mail to Defendants' counsel: "I don't know who you bullshitted or who your partners paid off for you to get into Harvard. You're an absolute fucking idiot[.]" R. Doc. 46.

43 at 21-22. Judge Calianos first noted that Plaintiff had not acted to vacate the

Administrative Law Judge's order to participate in the creation of a Joint Pretrial

Statement and to prepare for trial. *Id.* at 6.

With regard to Plaintiff's desire "to go to U.S. District Court," ALJ

Calianos said:

> **I will state for the record, I think you're trying to do it now in bad faith and for no other reason than to delay this proceeding.  That's my opinion based on everything I see**, unfortunately, because you can't have it both ways.  You can't tell me one day you're ready to go and you want to go, and then say [audio drop] and you don't want to [audio drop].

*Id.* at 7 (emphasis added).

Judge Calianos noted that Plaintiff could have filed his case in federal court

any time after May 5, 2021:

> So certainly as of May 5th, you would've had the right to do that, but you didn't exercise the right.  No one exercised the right.  You all pushed forward for trial.
>
> We were actually scheduled for trial on July 27th.  We were all gearing up for trial. ... However, due to the discovery snafu that appeared to happen after your deposition regarding particular text messages, I did continue the trial.  When I learned the discovery wasn't produced, I put you back on expeditiously, and **now you want to get out of this process.  I don't think it's in good faith.  I think you want to delay the process.**
>
> That's my opinion, and I get it.  You're not ready.  The joint pretrial order wasn't filed.  You didn't partake in the process from what I gather, because you thought you could just tell me you're leaving and that would be the process.  But that's not the legal process.  ***

Something more is required. Draft a complaint, do something, show me that's really your intent. It's just not enough for me to stop the bus and say, okay because so-and-so says they want to do this, I'm going to vacate all my court orders and hope they do what they say they're going to do. And if they don't, what's happened? We've caused a delay that was totally controlled by a party that shouldn't have that kind of control at any proceeding.

*Id.* at 8-9 (emphasis added).

With regard to Defendants' motion for a finding of bad faith by Avery Wilson, ALJ Calianos noted that the issue would have to be addressed *de novo* by the federal judge assigned the case. *Id.* at 15-16, 18. Judge Calianos stated:

The reality, for good or for bad, Mr. Wilson--everything you've written to me in the past few days is part of this public record so any judge, federal or otherwise, looking at this will see all of that. As I said, I don't take offense to any of it. But I think the way you've conducted yourself is indicative of the process. I know that, as I said, you're frustrated, you're emotional. I get it. I've been there. But **the path you went on is really indicative of not good faith, I'll tell you that.**

A good faith path would've been filing an appropriate motion, and we had this discussion when I spoke with you. I told you, if you need relief, you've got to file an appropriate motion. I have to hold you to the same standard. You told me you understood all of that, and you did. You sent me emails, which are not appropriate motions. The rules tell you how to file an appropriate motion to get relief from an order. The reality is that after our conversation last week, I put an order in place. It was my order. It's a real order, whether you want to believe it or not, and I'm a real judge. Whether you think I'm good or bad, that's irrelevant. ***

**I think the path you've gone on in delaying the turnover of the phone** for whatever reason without me understanding any of that until today, when I gave the opportunity to you and your former counsel to extend discovery, **is inexcusable, in my opinion. To get more mileage**

**out of the process because of those actions wouldn't be appropriate, in my belief.**

I just don't think--**if you're given the opportunity to do something and you squander that opportunity and now you're saying, now I want a second, third, fourth bite at the apple, it's just not a fair process.** When I try to--I try to keep it fair on both sides, okay? That's why we have these conferences. That's why I do them on the record. That's why I asked the questions I asked. And occasions when you're not going to be ready for trial, you should've filed an appropriate motion indicating you wanted a different path, and none of that happened. You put your head in the sand. You said a lot of derogatory things about a lot of people in public filings. **That's not indicative of good faith to me.**

But again, that's not my decision to make ultimately. It's for another judge to make.

*Id.* at 18-20 (emphasis added).

### Dismissal of the Administrative Law Complaint with prejudice

ALJ Calianos imposed deadlines for Plaintiff to file this case and to provide to the Office of Administrative Law Judges of the Department of Labor a copy of the complaint filed here.R. Doc. 44. Within the time limits set by Judge Calianos, Plaintiff filed this case and provided a file-stamped copy of the complaint to the Administrative Law Judge. Based on that filing, ALJ Calianos dismissed the administrative proceedings before the Department of Labor with prejudice. R. Doc. 45.

**The Case Below**

Wilson filed his case *pro* se in the United States District Court for the Western District of Missouri on September 22, 2021. R. Doc. 1.[6]

Defendants filed an answer preserving the defense of lack of subject matter jurisdiction. R. Doc. 7. On November 12, 2021, Defendants filed their motion to dismiss for lack of subject matter jurisdiction and provided the District Court with portions of the voluminous record from the administrative proceedings on Wilson's OSHA complaint. R. Doc. 9.

On September 19, 2022, District Judge David Gregory Kays dismissed Wilson's complaint for lack of subject matter jurisdiction. R. Doc. 33. Wilson filed a document styled as "Plaintiff's Objections" (R. Doc. 35) which Judge Kays treated as a motion for reconsideration and denied in a brief order on September 29, 2022. R. Doc. 38. Wilson has not appealed from Judge Kays' Order of September 29, 2022.

---

[6] Wilson's complaint identified his cause of action as arising pursuant to "49 U.S.C. 31105." *Id.* at 4.

## SUMMARY OF THE ARGUMENT

Federal courts are courts of limited jurisdiction, and the presumption is that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction in this case is on Plaintiff-Appellant Wilson. *Id.*

Wilson failed to meet his burden of establishing subject matter jurisdiction. His argument that because many of his acts in bad faith occurred more than 210 days after the filing of his complaint with OSHA on October 7, 2020, the federal courts have subject matter jurisdiction for *de novo* review of his claims under 49 U.S.C. § 31105(c) regardless of whether he acted in bad faith after May 5, 2021, to delay the administrative trial of his claims, should be rejected by this Court. Wilson cites no cases in support of his central appellate argument.

Some of Wilson's acts of bad faith occurred during what he characterizes as "the 210-day window" from October 7, 2020, to May 5, 2021. Defendants contend that Wilson's complaint itself was brought in bad faith. They also contend that Wilson's deposition testimony—taken within "the 210-day window"—falsely represented that his attorneys had failed to produce documents he had already given them as of March 30, 2021.

While Defendants do not know the precise date that Wilson fabricated the documents his attorney's paralegal produced on May 27, 2021, his conduct in the

Appellate Case: 22-3049     Page: 24     Date Filed: 03/06/2023 Entry ID: 5251791

administrative proceedings was characterized as bad faith or inconsistent with

good faith by ALJ Calianos as well as by Judge Kays.


## ARGUMENT

Wilson makes unsupported factual statements without citation to the record

below, fails to acknowledge his burden to establish subject matter jurisdiction,

misrepresents the District Court's reasoning and the administrative record, and

attempts to mislead this Court concerning the contents of the administrative record.


**I. Wilson's Appeal Should be Denied because Wilson Has Failed to Comply with the Baseline Requirements of Federal Rule of Appellate Procedure 28 and to Support his Factual Assertions and Legal Arguments with Citations to the Record, Putting an Undue Burden on Appellees and the Court to Try to Discern the Merit of His Appeal.**

**(a) Standard of Review**

This Court determines a party's compliance with the appellate rules as a

mixed issue of facts and law.


**(b) Analysis.**

Wilson chose to pursue his case and to appeal *pro se* after firing his lawyer

late in the administrative process due to what he termed "ineffectual counsel."

Nevertheless, his choice to proceed without an attorney does not give him the right

to impose an undue burden on Defendants/Appellees and on the Court to pry the

support for his challenge to the dismissal of his case from the record before the District Court.

Wilson fails to provide the Court with a Table of Contents, with page references (Rule 28(a)(2)); a Table of Authorities with references to the pages of the brief where the references are cited (Rule 28(a)(3)); a concise statement of the case "with appropriate references to the record (see Rule 28 (e))"(Rule 28(a)(6)); a statement of the applicable standard of review for each issue he raises (Rule 28 (a)(8(b); and citations to the record in the argument section of his brief (Rule 28(a)(8)(a). Mr. Wilson also waived any arguments not "meaningly argued" in his opening brief. *Farmer's Edge Inc. v. Farmobile LLC,* 970 F.3d 1027, 1034 (8th Cir. 2020); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc*., 908 F.3d 313, 324 (8th Cir. 2018); *Ahlberg v. Chrysler Corp*., 481 F.3d 630, 636 (8th Cir. 2007).

Wilson's choice not to cite to the record before the District Court, which includes the record of proceedings before the Department of Labor's Administrative Law Judge Jonathan Calianos, puts the burden on the Court to attempt to find support for Wilson's statements in the record below. The Court should decline to do that work for him and should affirm based on Wilson's failure to support his appeal as required by the Federal Rules of Appellate Procedure.

.

Appellate Case: 22-3049   Page: 26   Date Filed: 03/06/2023 Entry ID: 5251791

**II. Wilson Failed to Meet His Burden to Establish Subject Matter Jurisdiction Because He Failed to Support His Claim that Wilson's Bad Faith Conduct Did Not Cause a Delay in the Administrative Proceedings.**

**(a) Standard of Review**

When the District Court's decision to dismiss for lack of subject matter jurisdiction is based on the complaint supplemented by undisputed facts evidenced in the record, the appellate court's review is "limited to determining whether the District Court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." *Osborn v. U.S.*, 918 F.2d 724, 730 (8th Cir. 1990), *citing Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.) (district court has power to decide disputed factual issues in a motion under Rule 12 (b)(1)), *cert denied*, 454 U.S. 897 (1981).

If the Court relied, however, on its own determination of disputed factual issues, the appellate court must then review those findings under the "clearly erroneous" standard. *Id., citing Williamson* and *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 (11th Cir. 1982)(the clearly erroneous standard governs findings of jurisdictional fact). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the

23

plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*, *citing Mortensen v. First Fed. Sav. Loan Ass'n*, 549 F. 2d 884, 891 (3ʳᵈ Cir. 1977).

**(b) Analysis**

Wilson's argument boils down to his statement on page 8 of his brief that "ALJ rung the 210-day bell at the outset when ALJ issued the scheduling order." In other words, because Administrative Law Judge Jonathan Calianos generated a scheduling order in the underlying OSHA proceeding that set a trial date more than 210 days from the filing of Wilson's original OSHA complaint, Wilson was entitled to take his claims to federal court by 49 U.S.C. §31105(c) anytime after May 5, 2021, regardless of any bad faith conduct Wilson engaged in at any time.

Wilson cites no cases in support of his argument. Defendants' counsel has not found any cases addressing this issue in the way Wilson suggests. This appears to be a case of first impression.

Adopting Wilson's theory would invite bad faith conduct by every Complainant in OSHA proceedings except in the unlikely scenario that the Administrative Law Judge is able to produce a final ruling within 210 days from the day the original complaint was filed. This interpretation of the statute would incent delay by Complainant in the administrative proceedings and would make a mockery of the concept of bad faith by its suggestion that that §31105(c) gives every Complainant a "Get Out of Jail Free" card to engage in bad faith conduct

Appellate Case: 22-3049     Page: 28     Date Filed: 03/06/2023 Entry ID: 5251791

before the administrative law judge because the Complainant would always have the option of taking his case in federal court with his slate wiped clean for "*de novo*" review. Those would be bad policies to adopt.

Wilson is an extreme example of the mischief a litigant could cause with such a statutory pass. He got himself into trouble when he claimed (falsely) in his deposition that his lawyer had not turned over to defense counsel all of the documents he had given his lawyer.[7] Unsurprisingly, his attorney was unable to produce these new documents until nearly two months after Wilson's deposition—conveniently after the close of the discovery period and after Wilson's "210 day window" had expired.

Defendants quickly identified the documents produced on May 27, 2021, as fabricated and spoliated, and requested that Wilson produce his mobile phone and computers for a forensic electronic examination. Defendants raised this issue with ALJ Calianos, who agreed that the fabrication and spoliation of documents produced to support Wilson's claims was a serious issue that needed to be addressed.

---

[7] To be clear, Respondents do not concede that Wilson's complaint is legitimate, or was brought in good faith. To the contrary, Respondents contend that Wilson's complaint is false and frivolous and was brought in bad faith from the beginning, and that his conduct both before and after filing his complaint was all in bad faith and permeated the administrative proceedings from the beginning.

Appellate Case: 22-3049     Page: 29     Date Filed: 03/06/2023 Entry ID: 5251791

Wilson refused to turn over his mobile phone to his own attorney for a forensic electronic examination as ordered by ALJ Calianos, instead firing his attorney for what Wilson termed "ineffectual counsel."  R. Doc. 9-32 and 9-33. He refused to cooperate with Defendants' counsel in preparing for the administrative hearing explicitly on the representation that he intended to take his case to federal court instead.

Near the end of the administrative proceedings Wilson crudely attacked ALJ Calianos,[8] heaping disrespect on a public servant trying to do his job even for a scofflaw plaintiff.[9]

---

[8] Wilson wrote: "…I did not serve this Country so a complete fucking imbecile of a 'Judge' could shit all over the law and all over process.  You probably couldn't get a firm to take you so obviously you blew someone to get a phony judgeship on a phony quasi court. …

"I cannot participate in a trial so completely fucked up by my previous counsel. Then you fucking knee cap me and close discovery. … You're an absolute fucking disgrace.  I guess one couldn't get expect [sic] anymore [sic] from a 'Judge' at thr [sic] DOL. …

"I want this letter on the docket."

R. Doc. 9-42.

[9] Wilson echoed this abuse when he insulted Judge Kays' law clerk after that young lawyer e-mailed Wilson a copy of the District Court's Order ruling against Wilson's Objections to Judge Kays' Order Dismissing Wilson's complaint for lack of subject matter jurisdiction.  R. Doc. 38. Wilson first responded with "Scumbag" [R. Doc. 40]; then Wilson wrote "You are clerking for a judge from the death throws [sic] of the Bush Administration lol wow! You are so  [Continued]

While ALJ Calianos did not react to the abuse from Wilson, he did find that Wilson's conduct of the litigation before him amounted to "bad faith" or "not in good faith." Judge Kays properly agreed with the ALJ's assessment.

Wilson must establish that this finding was clearly erroneous. Wilson has failed to meet that burden.

## CONCLUSION

For all the reasons stated, Wilson's appeal should be dismissed, and/or the District Court's Order Dismissing this case for lack of subject matter jurisdiction should be affirmed.

Respectfully submitted,

/s/ Floyd R. Finch, Jr.
Floyd R. Finch, Jr. MO Bar # 28377
24211 E. Strode Road
Blue Springs, MO 64015
816-560-1234
(Fax) 816-817-5206
ffinch@kcbusinesstriallawyers.com

Attorney for Defendants/Appellees

---

accomplished. Pathetic lame ass." [R. Doc. 41]; and finally, Wilson wrote "Have fun putting that on your resume', scumbag." [R. Doc. 42].

**CERTIFICATE OF COMPLIANCE**

I certify that Appellee's Brief complies with the Court's typeface and volume limitations in that it was prepared using 14-point Times New Roman typeface in Word and that the word count in the parts of the brief not excluded by Rule 32.1 (f) is 6433.

/s/ Floyd R. Finch, Jr.
Attorney

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2023, I served Appellees' Corrected Brief on Appellant Avery Wilson by e-mail and I electronically filed it with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

/s/ Floyd R. Finch, Jr.
Attorney

Appellate Case: 22-3049    Page: 32    Date Filed: 03/06/2023 Entry ID: 5251791